NOT DESIGNATED FOR PUBLICATION

No. 120,152

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JUSTIN GEORGE DERN,
*Appellant,*

v.

STATE OF KANSAS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Pottawatomie District Court; GARY L. NAFZIGER and JEFFREY R. ELDER, judges. Opinion filed March 6, 2020. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM: Justin George Dern appeals the district court's decision denying his K.S.A. 60-1507 motion raising ineffective assistance of trial counsel and other claims. The judge assigned to the K.S.A. 60-1507 proceedings was the same judge who had presided over Dern's criminal trial and his divorce proceedings. Dern filed a motion for recusal and, after that was denied, he filed an affidavit articulating his grounds for requesting recusal. The chief district judge reviewed the affidavit and denied the request for recusal. Dern's K.S.A. 60-1507 motion was later denied following an evidentiary hearing, but his sole issue on appeal is whether the district court erred by denying his

1

motion for recusal. For the reasons stated in this opinion, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2011, a jury convicted Dern of two counts of aggravated criminal sodomy and two counts of aggravated indecent liberties with a child, offenses he committed against his three-year-old daughters. Dern appealed, and the Kansas Supreme Court affirmed his aggravated indecent liberties with a child convictions and their consecutive life sentences, but it reversed his aggravated criminal sodomy convictions because the State had not presented sufficient evidence of each alternative mean of committing those crimes. *State v. Dern*, 303 Kan. 384, 412, 362 P.3d 566 (2015).

On June 1, 2016, Dern timely filed a pro se motion for habeas corpus relief under K.S.A. 60-1507. He alleged that the use at his criminal trial of incriminating statements he made while hospitalized violated his constitutional rights against self-incrimination, to due process, and to equal protection under the law, and he alleged that his trial counsel provided unconstitutionally deficient representation. Many of Dern's issues involved the fact that the Honorable Jeff Elder presided over the criminal trial and Dern's divorce proceedings, which occurred around the same time.

As for his inadequate representation argument, Dern alleged that his trial counsel: (1) failed to act when Dern informed counsel that Judge Elder had presided over his divorce hearing; (2) failed to act when Judge Elder referred to the divorce "during the [criminal] trial"; (3) failed to act on information that Judge Elder engaged in what Dern believed were ex parte communications with Dern's ex-mother-in-law throughout the criminal trial; (4) failed to object to evidence that allegedly violated a motion in limine order about posttraumatic stress disorder; (5) failed to request a mistrial when witnesses violated the district court's sequestration order; (6) failed to admit at trial interviews with

2

Dern's daughters that allegedly included exculpatory statements; (7) failed to object to Dern's daughters being found unavailable to testify at trial; (8) failed to interview certain witnesses and present certain evidence; and (9) presented no substantive defense to the charges. Dern asked the district court to reverse his convictions, appoint counsel, and "[i]ssue a[n] order that the judge recuse himself from any further involvement in the case." Judge Elder was assigned to preside over the K.S.A. 60-1507 proceedings.

On June 23, 2016, the district court appointed counsel to represent Dern in the K.S.A. 60-1507 proceedings. On August 11, 2016, Dern's counsel filed a motion for recusal under K.S.A. 20-311d. In accordance with K.S.A. 20-311d(a), the district court heard the motion informally on October 20, 2016, and it then denied the motion.

On November 15, 2016, Dern filed an affidavit alleging specific grounds for recusal of Judge Elder in accordance with K.S.A. 20-311d(c). He alleged that while presiding over his divorce proceedings "approximately a week and a half prior to the criminal trial," Judge Elder made the comment that "'[i]f things go the way Mr. Dern wants them to go in the criminal trial, then we will return here to discuss the custody of the children. For now, I am going to award sole custody of the children to Ms. Dern.'"

Dern also asserted that he had told two attorneys who represented him in the criminal proceedings that he needed a change of judge because his ex-mother-in-law, Sandy Bosse, had worked for Judge Elder, so he was worried Judge Elder would be biased against him. He alleged that during recesses in the criminal trial, he saw Bosse "coming and going from a doorway leading from the courtroom into the district court clerk's area and then onto [sic] the judge's chambers." Although he acknowledged that no one had "followed [her] through the door from the courtroom," so he did not know whether she had gone into the judge's chambers, Dern believed that Bosse was engaging in "ex parte communications" with Judge Elder, and he questioned whether she should have been allowed in that area since she was not a court employee or a court official.

3

Dern also asserted that during his criminal trial, Judge Elder was aware of misconduct by certain witnesses, including violating the court's sequestration order, but Judge Elder merely told those witnesses to cease their behavior rather than taking more severe action. Finally, Dern alleged that when he testified at his criminal trial and during defense counsel's closing argument, Judge Elder "turned his back to the jury and [Dern] and started looking at his watch [and] the clock on the wall and would swivel back and forth in his chair." In contrast, when the prosecutor gave her closing argument, "Judge Elder gave her his utmost attention. Even as far as chin in hands, elbows on desk with his eyes and face turned toward her at all times."

On November 17, 2016, Dern filed a second motion for recusal under K.S.A. 20-311d and for reassignment of the proceedings by the administrative judge. In an order filed December 22, 2016, Chief District Judge Gary Nafziger denied the motion, holding:

> "[T]he Affidavit contains conclusions and allegations, but no specific facts, which would lead this Court to conclude by a preponderance of the evidence that the Honorable Jeff Elder cannot fairly and impartially consider the evidence presented in the matter in dispute and make findings of fact and conclusions of law based upon the evidence presented at this time."

The district court held an evidentiary hearing on Dern's K.S.A. 60-1507 motion beginning on September 7, 2017, presided over by Judge Elder. Dern and his trial counsel in the criminal case testified at the hearing. On March 2, 2018, the district court issued its memorandum decision denying Dern's K.S.A. 60-1507 motion, rejecting Dern's self-incrimination claim and finding that "Dern has failed to sustain his burden that his counsel provided him with ineffective assistance of counsel." Dern timely appealed.

4

Dern's sole claim on appeal is that the district court erred in denying his motion for recusal. Dern does not challenge the district court's March 2, 2018 memorandum decision denying the merits of his ineffective assistance of trial counsel and other claims. The State argues that the facts alleged in Dern's affidavit of recusal failed to create a reasonable doubt about Judge Elder's impartiality in the K.S.A. 60-1507 proceedings.

"In Kansas, there are at least three possible substantive bases on which a litigant may argue that a judge's recusal is required": (1) statutory factors under K.S.A. 20-311d; (2) the Kansas Code of Judicial Conduct; and (3) the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *State v. Sawyer*, 297 Kan. 902, 905-06, 305 P.3d 608 (2013). Dern raises arguments under K.S.A. 20-311d and the Kansas Code of Judicial Conduct. The Kansas Supreme Court has made clear that the analytical framework for reviewing the denial of a motion for change of judge depends on the basis for the challenge. See *Sawyer*, 297 Kan. at 907-08.

*K.S.A. 20-311d*

In Kansas, if a motion to recuse a judge is denied after an informal hearing, the moving party may file an affidavit alleging the specific grounds for recusal and the chief judge will either determine the legal sufficiency of the affidavit or refer the affidavit to another judge for that determination. K.S.A. 20-311d(a)-(b). Such an affidavit may allege:

> "(5) The party or the party's attorney filing the affidavit has cause to believe and does believe that on account of the personal bias, prejudice or interest of the judge such party cannot obtain a fair and impartial trial or fair and impartial enforcement of post-judgment remedies. Such affidavit shall state the facts and the reasons for the belief that bias, prejudice or an interest exists." K.S.A. 20-311d(c).

5

Reviewing the denial of a motion to recuse under K.S.A. 20-311d involves two steps:

"'(1) Did the . . . judge have a duty to recuse himself or herself from this case because the judge was biased, prejudicial, or partial? [and] (2) If the judge did have a duty to recuse and failed to do so, is there a showing of actual bias or prejudice to warrant setting aside the judgment of the trial court?'" *State v. Reed*, 282 Kan. 272, 277, 144 P.3d 677 (2006).

The first step of this test requires determining whether "the circumstances and facts of the case 'create[d] reasonable doubt concerning the judge's impartiality.'" 282 Kan. at 277. More recently, the Kansas Supreme Court clarified:

"'When faced with an affidavit of prejudice filed pursuant to K.S.A. 20-311d, this court has unlimited review, and on appeal *must decide the legal sufficiency of the affidavit and not the truth of the facts alleged*. We examine whether the affidavit provides facts and reasons pertaining to the party or his or her attorney which, if true, give fair support for a well-grounded belief that he or she will not obtain a fair trial. We determine whether the charges are grounded in facts that would create reasonable doubt concerning the court's impartiality, not in the mind of the court itself, or even necessarily in the mind of the litigant filing the motion, but rather in the mind of a reasonable person with knowledge of all the circumstances.' [Citations omitted.]" *State v. Moyer*, 306 Kan. 342, 371, 410 P.3d 71 (2017).

Dern asserts that Chief Judge Nafziger applied the wrong test in reviewing his affidavit because the order denying the motion for recusal did not explicitly state whether the affidavit was legally sufficient. The State does not respond to this argument.

We agree with Dern that Chief Judge Nafziger's order denying the motion for recusal did not explicitly state whether the affidavit was legally sufficient. But although the best practice is for district courts to articulate the legal test used when deciding a motion for change of judge, Kansas appellate courts do not always require district courts

to state explicitly the test used. See *Gannon v. State*, 305 Kan. 850, 887, 390 P.3d 461 (2017) (noting that when the record shows that the district court was aware of the proper legal test, appellate courts presume that it applied the proper test).

Chief Judge Nafziger had to determine whether Dern's affidavit supported "a well-grounded belief that he" would not obtain a fair hearing on his K.S.A. 60-1507 motion. See *Moyer*, 306 Kan. at 371. It is apparent from Chief Judge Nafziger's ruling that he found that the affidavit failed to do so. Although Chief Judge Nafziger's reference to the "preponderance of the evidence" does not apply the correct standard, this court exercises unlimited review over the legal sufficiency of Dern's affidavit. See 306 Kan. at 371. Even if Chief Judge Nafziger used the wrong test, remand for reconsideration is not required.

Turning to the merits of Dern's affidavit, Dern focuses his appellate arguments on the final assertion of bias in his affidavit: Judge Elder's behavior during Dern's criminal trial. The State asserts that by failing to argue that the other allegations in his affidavit required a change of judge, Dern has waived those arguments. Dern did not respond to this assertion in his reply brief. When an appellant fails to brief arguments, he or she waives and abandons them. See *Lambert v. Peterson*, 309 Kan. 594, 598, 439 P.3d 317 (2019). Thus, we will focus on the legal sufficiency of Dern's allegations that Judge Elder's behavior during his criminal trial, if taken as true, "would create reasonable doubt concerning the court's impartiality . . . in the mind of a reasonable person with knowledge of all the circumstances." See *Moyer*, 306 Kan. at 371. Dern alleged in his affidavit:

> "6. And finally the last things that my supporters and myself observed was that when I was on the stand testifying, the judge had turned his back to the jury and I and started looking at his watch, the clock on the wall and would swivel back and forth in his chair. While [defense counsel] gave her closing argument, it was more of the same actions from the judge. Yet when [the prosecutor] gave her closing arguments, Judge Elder gave her his utmost attention. Even as far as chin in hands, elbows on desk with his eyes and face

7

turned toward her at all times. Canon 2, Rule 2.3(B) deals specifically with this in the Rules Adopted By the Supreme Court of the State of Kansas."

Dern argues that "Judge Elder's body language and demeanor during the criminal trial, which, if taken as true, is significant and raises concerns of Judge Elder's attention during that trial, and his likely attention to be given during the post-conviction proceeding at hand." The State responds that Dern's allegations are unsupported by the jury trial transcript. But the veracity of allegations in an affidavit filed under K.S.A. 20-311d is not relevant. See *Moyer*, 306 Kan. at 371 (finding that appellate court must decide the legal sufficiency of the affidavit and not the truth of the facts alleged).

Although not cited by either party, a case that is factually similar to Dern's claim is *State v. Harwood*, No. 114,476, 2017 WL 945767, at *7-10 (Kan. App.) (unpublished opinion), *rev. denied* 306 Kan. 1324 (2017). In that case, this court reviewed the district court's denial of a posttrial, presentencing motion for change of judge. The K.S.A. 20-311d affidavit alleged, in relevant part, that the district judge, during the first of two criminal trials on the charges, displayed his "'negative attitude towards the defendant'" through his "'facial expressions, tone of voice and inflection of his voice in the presence of the jury'" and did not "'appear to be listening to the defense attorney's statements to the Court.'" 2017 WL 945767, at *8.

In addressing the claim, this court noted that the allegation that a judge "generally displayed a negative attitude toward [the defendant] based on facial expressions, tone of voice, and inflection . . . is difficult to review on appeal." 2017 WL 945767, at *8. Pointing out that the defendant did not explain "what was going on in the trial at the time [the judge] displayed a negative attitude" or "cite to a point in the record where [the judge] was unable to make a ruling because the judge was not listening," this court held that "without specific facts to review, [we] cannot say that an objective observer would have a reasonable doubt about the judge's impartiality." 2017 WL 945767, at *8.

8

In any event, whether Judge Elder may have been biased and should have recused himself from the criminal trial is not the issue before us now. The only issue for us to decide is whether Dern is now entitled to a new hearing on his K.S.A. 60-1507 motion because Judge Elder presided over the hearing. We limit our analysis to the argument Dern has made on appeal. In the end, we do not need to decide whether Judge Elder should have been disqualified from presiding over the K.S.A. 60-1507 hearing.

Even if Judge Elder had a duty to recuse himself, Dern must make "'a showing of actual bias or prejudice to warrant setting aside the judgment of the [K.S.A. 60-1507] court.'" See *Reed*, 282 Kan. at 277. Dern makes no argument that Judge Elder's alleged bias prejudiced him *in the K.S.A. 60-1507 proceedings*. Dern does not challenge Judge Elder's memorandum decision denying the merits of his K.S.A. 60-1507 motion. Without asserting such a claim of error, Dern cannot possibly show prejudice sufficient to prevail on his claim that Chief Judge Nafziger erred in denying the recusal motion. Dern's arguments based on K.S.A. 20-311d fail.

*Code of Judicial Conduct*

Dern also cited Rule 601B, Canon 2, Rule 2.3(B) of the Kansas Code of Judicial Conduct (Code) in his affidavit. He now argues that the Code required Judge Elder's recusal. Our Supreme Court has questioned whether the Code is a proper basis for a litigant to demand recusal of a judge. See *Moyer*, 306 Kan. at 372-73. But the *Moyer* court then acknowledged that "we have previously considered the Code as a separate basis for recusal," and with no argument from the State asking it to "change that tack," the *Moyer* court continued its analysis. 306 Kan. at 373. Similarly, the State here does not argue that the Code is not a proper basis for argument on a denied motion to recuse.

Rule 2.3(B), which Dern specifically cites, states:

9

"A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in *harassment*, including but not limited to bias, prejudice, or *harassment* based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so." (2019 Kan. S. Ct. R. 444.)

Comment 2 to Rule 2.3 explains that "[e]ven facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased." (2019 Kan. S. Ct. R. 444.) And Rule 601B, Canon 2, Rule 2.11(A) addresses judicial disqualification, and states: "A judge shall disqualify himself or herself in any proceeding in which the judge's *impartiality* might reasonably be questioned, including but not limited to the following circumstances: (1) The judge has a personal bias or prejudice concerning a party . . . ." (2019 Kan. S. Ct. R. 449.)

When the propriety of recusal is examined in the context of the Code, "the focus is on assuring that the defendant obtained a fair [hearing]." *Moyer*, 306 Kan. at 375. So even if Dern has shown that Judge Elder "had a duty to recuse under the [Code] and failed to do so," he must show "that actual bias or prejudice warrants setting the [district court's holding] aside." See *State v. Schaeffer*, 295 Kan. 872, 875, 286 P.3d 889 (2012).

Once again, Dern has not articulated any occurrences in the K.S.A. 60-1507 proceedings that he alleges were unfair and that he alleges were caused by Judge Elder's alleged bias and prejudice against him. Thus, even if Judge Elder should have recused under the Code, any such error was harmless and does not require reversal. See *Moyer*, 306 Kan. at 375; *Schaeffer*, 295 Kan. at 876-77.

Affirmed.